# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ERIC HERRION, SR. and LASHELLE JONES-HERRION, parents of the minor child M.H., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 18-2827 (RMC) |
| v. | ) ) | |
| DISTRICT OF COLUMBIA, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Under the Individuals with Disabilities Education Act, Defendant District of Columbia Public Schools (DCPS) was required to evaluate 13-year-old student M.H. to determine if she had a disability and was eligible for special education services. Of the five assessments DCPS agreed to include as part of its evaluation, DCPS performed only four. Of those four, an administrative hearing officer found that only three had been properly performed. Believing that the DCPS evaluation was deficient, Plaintiffs, the parents of M.H., asked DCPS to fund an Independent Educational Evaluation which would include all five assessments. While DCPS initially refused altogether, it has since offered to fund independent assessments for those two assessments which DCPS itself failed to properly perform, and Plaintiffs have taken DCPS up on that offer. The question now is whether those two independent assessments suffice to moot Plaintiffs' request.

For the reasons described below, the Court finds that the inability of DCPS to defend its own evaluation entitles M.H. to a full Independent Education Evaluation, including all

1

relevant assessments. Accordingly, the Court will grant Plaintiffs' motion for summary judgment and deny the cross motion filed by DCPS.

## I. BACKGROUND

### A. Statutory Framework

The Individuals with Disabilities Education Act of 2004 (IDEA), 20 U.S.C. § 1400 *et seq.*, aims to ensure that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *Id.* § 1400(d)(1)(A). Under IDEA, schools must promptly identify, locate, and evaluate every child with a disability who resides in the school district who may require special education and related services. *Id.* § 1412(a)(3)(A). Once a disabled child is identified, the child's parents, teachers, school officials, and other professionals collaborate to develop an individualized education program (IEP) to meet the child's unique needs. *See id.* §§ 1412(a)(4), 1414(d)(1)(B).

Although IDEA is a federal statute that applies nationally, the Court describes it here as it affected Plaintiffs. The process kicks off when the "local education agency," in this case DCPS, performs an "initial evaluation" to determine if a child has a qualifying disability. *Id.* § 1414(a)(1). In conducting the evaluation, DCPS must use "a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information," and the child must be assessed "in all areas of suspected disability." *Id.* § 1414(b). No "single measure or assessment" may be used "as the sole criterion for determining whether a child is a child with a disability." *Id.* This evaluation, and any subsequent re-evaluation, forms the basis for identifying the child's needs and the requirements of the child's IEP to meet those needs and support her educational development.

2

If a parent of a student is dissatisfied with DCPS' "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," *id.* § 1415(b)(6), IDEA entitles them to present their arguments in an "impartial due process hearing." *Id*. § 1415(f). At that hearing, the parties may present evidence and expert testimony about the child's educational and functional needs. *Id*. § 1415(f), (h). After the hearing, an independent hearing officer issues a Hearing Officer Determination (HOD), which determines whether DCPS denied the student a free appropriate public education (FAPE) and, if so, orders an appropriate remedy. *Id*. § 1415(f)(3)(E); *see also B.D. v. District of Columbia*, 817 F.3d 792, 798 (D.C. Cir. 2016). Any party aggrieved by the hearing officer's determination may bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2).

More specifically, parents such as M.H.'s who disagree with an evaluation by DCPS may examine all the records a school possesses concerning their child and obtain their own independent education evaluation (IEE) for consideration. *Id.* § 1414(b). That IEE must be publicly funded unless DCPS can demonstrate to an administrative hearing officer "that its evaluation [was] appropriate." 34 C.F.R. § 300.502(b). "IDEA thus ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion." *Schaffer ex rel. Shaffer v. Weast*, 546 U.S. 49, 60-61 (2005). "They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition." *Id.* at 61.

**B. Evaluation of M.H.**

In the fall of 2017, M.H. was a thirteen-year-old student at Brookland Middle School in the District of Columbia. *See* Admin. R. (AR) [Dkts. 7-8] at 20. DCPS first evaluated M.H. in 2012, determined that she was a child with a disability, and developed an IEP for her. *Id.* at 401-09. That IEP was most recently modified in May 2017. *Id.* at 412-420. In October

3

2017, Plaintiffs, the parents of M.H., asked DCPS to re-evaluate M.H. to determine if changes to her special education services were necessary. *Id.* at 118-19. DCPS agreed to the re-evaluation and to assess M.H. in five areas: assistive technology; occupational therapy; speech/language; functional behavior; and comprehensive psychological. *Id.* at 435. Ultimately, M.H. received a comprehensive psychological assessment, an occupational therapy assessment, a speech and language assessment, and a functional behavior assessment. *See id.* at 465-71. However, M.H. received no assessment related to assistive technology. Based on the four assessments she did receive, DCPS finalized its evaluation of M.H. in March 2018 and revised her IEP. *Id.* at 476-98. As part of its evaluation, DCPS also concluded that M.H. did not require the use of assistive technology devices. *Id.* at 477.

Plaintiffs disagreed with the result of DCPS' evaluation and asked DCPS to fund an IEE for M.H. *Id.* at 472. Specifically, they requested funding for independent assessments mirroring the four assessments already performed by DCPS, and for DCPS either to perform an assistive technology assessment itself or fund an independent assessment. *Id.* After brief consideration, DCPS agreed to amend that speech/language assessment for M.H. but otherwise declined to fund assessments that it viewed as duplicative. *Id.* at 500. In April 2018, Plaintiffs filed an administrative complaint seeking an order requiring DCPS to fund an IEE for M.H. *Id.* at 309-20. Plaintiffs also alleged that DCPS had failed to implement M.H.'s 2017 IEP properly during the 2017-18 school year and sought compensatory education. *Id*. In May 2018, DCPS filed its own administrative complaint seeking to defend its evaluation. *Id.* at 502, 505. Notwithstanding, in June 2018, DCPS offered to fund an independent assistive technology assessment and 80 hours of tutoring as compensatory education. *Id.* at 375-77.

The administrative hearing was held on June 12, July 5, and September 21, 2018, and the Hearing Officer issued his opinion on September 26, 2018. *See generally* HOD, AR at 1-21. As relevant to this case, the Hearing Officer determined that DCPS properly conducted the speech and language, occupational therapy, and functional behavior assessments, but that DCPS had improperly performed the psychological assessment and failed to perform the assistive technology assessment. *Id.* The Hearing Officer thus concluded that M.H. was entitled to publicly funded psychological and assistive technology assessments, and ordered the former, which DCPS had not already offered to fund. *Id.* at 14-17. The Hearing Officer also concluded that M.H. was not entitled to independent assessments mirroring those assessments which DCPS had properly performed. *Id.* Finally, the Hearing Officer concluded that DCPS had failed to implement M.H.'s IEP during the 2017-18 school year and, based entirely on the recommendation of DCPS, ordered 80 hours of tutoring as compensatory education. *Id.* at 18-20.

Plaintiffs procured an independent assistive technology assessment for M.H. in November 2018, and an independent comprehensive psychological assessment in March 2019. *See* Def.'s Reply to Pls.' Opp'n to Def.'s Cross Mot. for Summ. J. (Def.'s Reply) [Dkt. 17], Exs. 1-2 [Dkts. 17-1 and 17-2], Independent Assistive Technology and Psychological Assessments.

Plaintiffs filed the present action in December 2018, seeking review of the Hearing Officer's determination. *See* Compl. [Dkt. 1]. Plaintiffs argue that the Hearing Officer erred when he denied M.H. an IEE including all five assessments (Count I), and when he found

that 80 hours of tutoring was sufficient compensatory education (Count II). Both parties now move for summary judgment and the matter is ripe for review.[1]

## II. LEGAL STANDARD

Although motions for review of an HOD are styled as motions for summary judgment, the court does not follow "a true summary judgment procedure." *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012) (citation omitted). Instead, a motion for summary judgment in this context operates as a motion for judgment on the administrative record and on any additional evidence presented by the parties. *D.R. ex rel. Robinson v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009).

A party challenging a hearing officer's administrative determination "must at least take on the burden of persuading the court that the hearing officer was wrong." *See Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989). "While the court must make an independent determination, the court also should give due weight to the decision of the hearing officer and should afford some deference to the expertise of the hearing officer and the school officials." *D.K. v. District of Columbia,* 983 F. Supp. 2d 138, 144 (D.D.C. 2013) (citation omitted). Despite this instruction, a court affords somewhat less deference to HODs in the context of IDEA than is conventional for most other administrative proceedings. *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005). "Moreover, a hearing decision without reasoned and specific findings deserves little deference." *Id.* (citation omitted).

---

[1] *See* Pls.' P. & A. in Supp. of Pls.' Mot. for Summ. J. [Dkt. 11-2]; Def.'s Opp'n to Pls.' Mot. for Summ. J, & Cross Mot. for Summ. J. (Cross Mot.) [Dkt. 12]; Pls.' Opp'n to Def.'s Cross Mot. for Summ. J. [Dkt. 14]; Def.'s Reply.

## III. ANALYSIS

### A. Independent Educational Evaluation

As a preliminary matter, multiple documents in the Administrative Record, and on occasion the parties in their briefs, use the terms "assessment" and "evaluation" interchangeably. Although in common parlance these words would be synonyms, "IDEA defines them differently." *Jones v. District of Columbia*, 15-cv-01505, 2017 WL 10651264, at *13 (D.D.C. Jan. 1, 2017) (citing *T.P. ex rel. T.P. v. Bryan Cty. Sch. Dist.*, 792 F.3d 1284, 1291 n.13 (11th Cir. 2015)). "Diagnostic assessments—which the IDEA refers to simply as 'assessments'—are the tools used as part of an evaluation or re-evaluation of a student to ensure that the child is evaluated in 'all areas of suspected disability' and to 'determin[e] an appropriate education program for the child.'" *Id.* (quoting 20 U.S.C. § 1414(b)) (internal citations omitted). "On the other hand, an 'evaluation' or 're-evaluation' is the process during which these assessments occur." *Id.* (citing 20 U.S.C. § 1414(b)(2)). Thus, the statute "envisions that an evaluation or re-evaluation will make use of multiple assessments to fully evaluate the child's needs." *Id.* "Evaluations must take into account a holistic perspective of the child's needs." *Harris v. District of Columbia*, 561 F. Supp. 2d 63, 67 (D.D.C. 2008). Ultimately, the outcome of an evaluation flows from all of the assessments which undergird it.

This distinction is important because, when "a parent requests an independent education evaluation at public expense," the school must grant that request unless it can demonstrate to an administrative hearing officer "that its *evaluation* is appropriate." 40 C.F.R. § 300.502(b)(2) (emphasis added). That is, the school must defend the appropriateness of the evaluation as a whole and, thus, all of the assessments on which it relies. It cannot defend only some of the underlying data and demur on others because reaching an evaluative conclusion based on incomplete data would be, to borrow a phrase, arbitrary and capricious.

7

This brings the Court to the case at hand. It is unnecessary to consider whether the three assessments which DCPS performed and successfully defended were appropriate because the inquiry is not into individual assessments but rather the resulting evaluation. To that end, DCPS readily admits that when conducting its evaluation "it overlooked Plaintiffs' request for an [assistive technology assessment]." Cross Mot. at 23. DCPS also acknowledges that the Hearing Officer "concluded the psychological [assessment] conducted by DCPS was invalid." *Id.* at 23-24. Therefore, DCPS could only defend three of the five assessments it agreed at the outset were necessary to evaluate M.H. properly, that is, to evaluate *whether* M.H. has one or more disabilities and the *severity* of any such disabilities so that an appropriate individual education plan could be developed. With the half-performance demonstrated by DCPS at the hearing, the Hearing Officer erred in finding that the partial evaluation conducted by DCPS was appropriate. Therefore, M.H. was entitled to a publicly funded IEE.

DCPS argues that it should be allowed to piece together a complete evaluation with a mix of those assessments already performed by DCPS and two new independent assessments. The argument is unsupported by the statutory or regulatory language. Congress made clear that when DCPS (or any public school system) is preparing its evaluation, it must "administer such assessments and other evaluation measures as may be needed to produce the data" necessary to determine if the child has one or more disabilities. 20 U.S.C. § 1414(c)(2). By law, if DCPS determines that it needs no other data before the evaluation is finalized, parents who nonetheless believe additional data is needed have "the right . . . to request an *assessment*" to produce such data and contribute to the evaluation. *Id.* § 1414(c)(4)(A)(ii) (emphasis added). However, once DCPS finalizes an evaluation, parents have a statutory right "to obtain an independent educational *evaluation* of the child." *Id.* § 1415(b)(1) (emphasis added); *see also* 34

C.F.R. § 300.502(b)(1) (emphasis added) ("A parent has the right to an independent educational *evaluation* at public expense if the parent disagrees with an *evaluation* obtained by the public agency."). Congress did not provide a right to request independent assessments instead of an independent evaluation, but this is just common sense, since assessments are only the building blocks to an evaluation. Congress thus recognized that an evaluation considers a myriad of possible disabilities and assessments in a "holistic" fashion, depending on the child. *Harris*, 561 F. Supp. 2d at 67. More to the point, Congress recognized that assessments cannot be separated from the evaluation which they inform. Here, DCPS determined which assessments were needed to evaluate M.H. but failed to perform them all or even to defend successfully all of those it did perform. Without necessary assessments, its evaluation was clearly deficient. IDEA entitles M.H. to a publicly funded independent educational evaluation replicating all the assessments DCPS should have performed that are necessary to formulate that evaluation.

Notwithstanding, DCPS argues that IDEA encourages "partial resolution" of IEE disputes by encouraging mediation before either parents or the school engages in the administrative hearing process. Cross Mot. at 11-12 (citing *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001-02 (2017); *C.W. Capistrano Unified Sch. Dist.*, 2012 WL 3217696, at *6 (C.D. Cal. Aug. 3, 2012); *J.P. ex rel. E.P. v. Ripon Unified Sch. Dist.*, 2009 WL 1034993, at *7 (E.D. Cal. Apr. 15, 2009)); *see also* 20 U.S.C. § 1415(e)(1) (requiring schools first offer mediation to resolve disputes); *see also id.* § 1415(f)(1)(B) (requiring a "resolution session" before any administrative hearing on the merits). The cases cited by DCPS concern deference and delay, not "partial resolution." Even with a more generous reading, at most the cited cases stand for the proposition that the parties should resolve or narrow the issues in dispute before an administrative hearing.

9

But mediation has not narrowed the issues here: DCPS continues to defend its deficient performance; it does not contest that five assessments are needed to evaluate M.H. properly and that it failed to conduct or defend five assessments, which inevitably leads to the conclusion that the evaluation was incomplete. Plaintiffs contend that they are entitled to a publicly-funded IEE that includes all five assessments. The Court agrees with Plaintiffs.[2] While the argument may be a closer call in other circumstances, the clear statutory language dictates a complete, independent evaluation be conducted for M.H.

### B. Compensatory Education

"Under the theory of 'compensatory education,' courts and hearing officers may award 'educational services . . . to be provided prospectively to compensate for a past deficient program.'" *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005) (citations omitted). "Compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an education deficit created by an educational agency's failure over a given period of time to provide a [free appropriate public education] to a student." *Id.* at 523 (internal citations omitted). Although discretionary, at bottom "awards compensating past violations [must] rely on individualized assessments." *Id.* Thus, when crafting a compensatory education program, "the inquiry must be fact-specific and . . . the ultimate award must be reasonably calculated to provide the education benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Id.* at 524.

---

[2] Plaintiffs have already had independent psychological and assistive technology assessments at DCPS' expense. However, if the results of those assessments are no longer valid for the purposes of the IEE, then those assessments must be repeated.

10

DCPS concedes that it failed to implement M.H.'s 2017 IEP properly in the 2017-18 school year, and that M.H. is entitled to some amount of compensatory education. DCPS further concedes that the Hearing Officer, who relied entirely on the recommendation of DCPS, did not conduct the appropriate "fact-specific" inquiry required when developing a compensatory education program for M.H. DCPS thus agrees with Plaintiffs that remand for re-consideration is appropriate.

The parties differ only insofar as Plaintiffs also request that DCPS be ordered to fund a mutually-agreed-upon expert to review M.H.'s record and develop a compensatory education program for consideration by the Hearing Officer. Plaintiffs contend that placing the burden on parents to fund such expert review will place such review beyond the reach of many families. But while publicly-funded IEEs are specifically contemplated by IDEA's regulatory scheme, *see* 34 C.F.R. § 300.502(b), Plaintiffs identify no statutory or regulatory support, nor corresponding precedent in the caselaw, whereby the Court might also require a publicly-funded compensatory education expert. This request will be denied.

## IV. CONCLUSION

DCPS did not attempt to administer an assistive technology assessment even after it realized that assessment had not been performed. DCPS also failed to defend the psychological assessment at the hearing on its deficient evaluation. By turn, the Hearing Officer failed to conduct the fact-specific inquiry necessary to develop a compensatory education program for M.H. Under the circumstances, the Hearing Officer's decision was erroneous and contrary to IDEA. Accordingly, the Court will grant in part Plaintiffs' Motion for Summary Judgment, Dkt. 9, deny Defendant's Cross-Motion for Summary Judgment, Dkt. 12, and order DCPS to fund a comprehensive IEE for M.H. This matter will also be remanded in part to an independent Hearing Officer to develop a compensatory education program suited to M.H.'s needs. A memorializing Order accompanies this Memorandum Opinion.

Date: October 10, 2019

ROSEMARY M. COLLYER
United States District Judge